HOLSUM FOODS DIVISION OF HARVEST STATES COOPERATIVES, Plaintiff-Respondent,†

v.

The HOME INSURANCE COMPANY, Defendant-Appellant.

Court of Appeals

*No. 90–1617. Oral argument March 12, 1991.—Decided April 24, 1991.*

(Also reported in 469 N.W.2d 918.)

† Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Craig W. Nelson, Michael T. Steber* and *William J. Richards* of *Piette, Nelson, Zimmerman & Dries, S.C.,* of Milwaukee. There was oral argument by *Craig W. Nelson.*

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert L. Binder* and *James L. Huston* of *Foley & Lardner* of Milwaukee. There was oral argument by *James L. Huston.*

Before Brown, Scott and Anderson, JJ.

BROWN, J.   The dispositive issue is whether Holsum Foods was in the business of manufacturing a product as opposed to providing services, when it mixed, cooked, jarred and packaged ingredients provided by a customer. We hold that Holsum was manufacturing a product. Therefore, Holsum was not covered by a Home Insurance comprehensive liability policy excluding property damage "to the named insured's products." We reverse the order and remand with directions to enter judgment for Home.

The facts are undisputed.[1] Holsum is a subdivision of Harvest States Cooperative. It is engaged in the busi-

---

[1] Both parties moved for summary judgment grounded on the joint determination that the facts were undisputed and only a question of policy interpretation was before the court. The trial court denied summary judgment because it concluded that it

ness of preparing and packaging a variety of foodstuffs. It entered into a contract with Kingsford Products, a subdivision of Clorox, to manufacture and package K.C. Masterpiece Barbecue Sauce. Kingsford purchased the majority of basic ingredients and materials, such as foodstuffs, the jar, the label, and the cap, from separate vendors. It then shipped the materials to Holsum's food

needed more information as to other possible causes of the damages. Home Insurance petitioned for review of this non-final order. Holsum concurred in the petition and cross-petitioned for leave to appeal. We granted the leave to appeal Home's petition. Home is therefore the "appellant" and Holsum is the "respondent" though, in truth, both parties are aggrieved by the trial court's decision that more factual evidence was needed.

Section 802.08(2), Stats., provides that summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. This court employs the same methodology as the trial court. *Kremers-Urban Co. v. American Employers Ins. Co.,* 119 Wis. 2d 722, 733, 351 N.W.2d 156, 162 (1984). That methodology is stated in many cases, such as *Preloznik v. City of Madison,* 113 Wis. 2d 112, 116, 334 N.W.2d 580, 582–83 (Ct. App. 1983). We need not repeat it.

We have reviewed the record. There are no disputed facts. Moreover, reasonable but differing inferences cannot be drawn. We conclude that the trial court erred in denying summary judgment. Normally, we would return the record to the trial court with instructions to decide the issue of law. In this case, we reach the merits now for the following reason. The petition for review was granted on August 16, 1990. Since that time, the parties have fully briefed the merits of several intricate and complex questions. Oral argument has also taken place. Due to the passage of time and the amount of work product conducted, it is in the interests of justice and proper use of judicial resources that we decide the issue without benefit of a trial court decision on the issue of law. *See Schuster v. Altenberg,* 144 Wis. 2d 223, 233 n.2, 424 N.W.2d 159, 163 (1988).

processing plant in Waukesha. Holsum mixed Kingsford's ingredients with a sweetener provided by Holsum. Holsum then cooked the mixture, packaged it into jars, packed the jars into cases, and stored the jars in its warehouse. The jars were shipped at Kingsford's direction.

At some point in the process, it was discovered that the bottling operation was chipping jars and depositing glass chips in the sauce. Holsum and Kingsford agreed to suspend the bottling operation and all of the barbecue sauce was put on hold pending an investigation. The investigation confirmed that glass chips were deposited in some jars during Holsum's operation. Specifically, the filler tube was striking the inside of the jars, causing the chipping.

Sampling of the sauce indicated that approximately two to three percent of all the bottles had chips. However, it was agreed that none of the finished product would be marketed since there was no way of determining which of the jars contained glass chips. Holsum agreed to pay Kingsford $1.3 million over three years.

Holsum made a claim against Home for the funds paid by Holsum pursuant to its agreement with Kingsford. Holsum contended that the damages were covered under the Home liability policy. Home refused coverage, citing a number of exclusions—only one of which we deem necessary to discuss in order to decide this appeal.

Home's policy has a clause which it entitled "Exclusion (n)." It denies coverage "to property damage to the named insured's products arising out of such products or any part of such products." The purpose of the exclusion, a standard exclusion used by the industry, is to prevent the insured from using its products liability coverage as a form of property insurance to cover the cost of repairing or replacing its own defective products or work.

Long, *Law of Liability Insurance,* sec. 11.09[2], at 11–85 and 11–86 (1991). This "injury to products or work" exclusion is intended to exclude insurance for damage *to* the insured's product or work, but not for damage *caused by* the insured's product or work. *Id.* Thus, Exclusion (n) excludes coverage for the risk that the insured's product may not turn out right. *See Trio's v. Jones Sign Co.,* 151 Wis. 2d 380, 384-85, 444 N.W.2d 443, 445 (Ct. App. 1989).

Home asserts that the barbecue sauce was Holsum's product and that Holsum is attempting to use the coverage to recover the cost of having produced a defect in the product. Holsum claims that the sauce was actually Kingsford's product and Holsum's work caused damage to Kingsford's product.

The dispositive issue is whether the sauce was Holsum's product. Stated in terms pertinent to discerning our standard of review, the question is whether the operations of Holsum resulted in the making of a "product" as that word is defined in the insurance policy. Thus, we are faced with the application of policy language to a concrete, stipulated fact situation. Only a question of law remains. *See Just v. Land Reclamation, Ltd.,* 155 Wis. 2d 737, 744, 456 N.W.2d 570, 572 (1990).

We begin with the policy definition of a product. The term "named insured's products" in Exclusion (n) is defined as: "goods or products manufactured, sold, handled or distributed by the named insured . . . including any container thereof . . .."

We analyze this policy definition using the same maxims that are applied to other contracts. *Wood v. American Family Mut. Ins. Co.,* 148 Wis. 2d 639, 652, 436 N.W.2d 594, 599 (1989). Words used in a policy should be given their common, everyday meaning and

should be interpreted as a reasonable person in the insured's position would have understood them. *Paape v. Northern Assurance Co. of America,* 142 Wis. 2d 45, 51, 416 N.W.2d 665, 668 (Ct. App. 1987). When the terms are plain and unambiguous, the court will construe the contract as it stands. *Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 460, 405 N.W.2d 354, 379 (Ct. App. 1987).

Resort to a recognized dictionary may be had in order to discern the plain meaning. *Just,* 155 Wis. 2d at 745, 456 N.W.2d at 573. The plain meaning of the definitional sentence concerning "products manufactured" can be gained by use of a dictionary. The plain meaning of the word "manufacture" is "something made from raw materials by hand or by machinery." *Webster's Third New International Dictionary* 1378 (3d ed. 1976). Thus, from the standpoint of a reasonable person in the insured's position, "manufacturing" a "product" means to create a tangible item.

When applying that plain meaning to the facts, we conclude that Holsum was manufacturing a product. Holsum was provided with someone else's ingredients to be sure. However, Holsum then provided an ingredient of its own, did the mixing and cooking, and created a tangible item—the barbecue sauce.

We are hard pressed to accept any of the alternative conclusions offered by Holsum. Holsum claims that this is Kingsford's product. However, Kingsford did not manufacture this barbecue sauce. Under the definition of the policy, a product is defined in part by reference to who manufactures it. Since Holsum "made" the sauce, we cannot say that Holsum was engaged in the installation of products made by someone else.

Holsum argues that cooking the ingredients is the same as providing a service. It argues that it had no

control over the product because it was told how to make it and how to package it. Holsum cites cases from other jurisdictions in an attempt to bolster its claim that the operations it performed amounted to a service rather than the making of a product. Where the insured's business primarily involves a service, it is true that an exclusion such as Exclusion (n) will not apply. As stated in *Kirchner v. Hartford Accident & Indemnity Co.,* 440 S.W.2d 751 (Mo. Ct. App. 1969), such an exclusion is:

> not effective to defeat property damage liability coverage extended by a comprehensive liability policy issued to a contractor when it was apparent that his operations were limited to the performance of services . . . and he purchased the policy to protect himself from claims arising out of the performance of his work and services.

*Id.* at 758, *referencing, Kissel v. Aetna Cas. & Surety Co.,* 380 S.W.2d 497 (Mo. Ct. App. 1964).

Our research of cases cited by Holsum, as well as cases we have found independently, like *Kirchner,* indicate to us, however, that the service/product distinction in those cases is inapplicable here. The reason is that none of the insureds in those cases was involved in the making of a tangible item. For instance, *Kirchner* involved a subcontractor hired to perform the labor in erecting the steel used in constructing a building. *Kirchner* at 753. Similarly, *Todd Shipyards Corp. v. Turbine Service, Inc.,* 674 F.2d 401, 420 (5th Cir.), *cert. denied,* 459 U.S. 1036 (1982), dealt with repair of a ship's turbine which was held to constitute a service, not the making of a product. In *Kissel v. Aetna Cas. & Surety Co.,* 380 S.W.2d 497, 503 (Mo. Ct. App. 1964), an excavation contractor, sued by adjoining landowners of a project the contractor was working on, was held to be

engaged in a service, precisely because the excavator did not create the product.

In this case, Holsum's contention cannot escape the obvious: Holsum created a tangible item, a fact not found in any other case holding that a service was provided. When that fact is present, the cases uphold the exclusion. For example, *St. John's Home of Milwaukee v. Continental Cas. Co.,* 147 Wis. 2d 764, 434 N.W.2d 112 (Ct. App. 1988), appears to be analogous. In that case, the insured, a mason, attempted to argue that a finished brick veneer wall was not the insured's finished work product because the insured furnished only the labor, mortar, ties and other items, but not the bricks themselves. The court held that the fully constructed wall was a product of the insured's labor and materials. *Id.* at 788, 434 N.W.2d at 122.

We think that this case is similar. Holsum provided the labor and a sweetener, but not the major ingredients. Still, just as the mason produced a tangible item—a wall—so has Holsum produced a tangible item—the sauce. Holsum attempts to distinguish *St. John's,* arguing that it involved the insured's negligent construction of a brick wall, not damage to other property caused by the insured's services. That argument begs the question. The policy defines a product as that which is manufactured; the plain meaning of "manufactured" is to make a tangible item; Holsum made it and therefore created a product. We conclude that Holsum's arguments to the contrary are unavailing.

Holsum argues that even if we hold it to have manufactured a product, the property damage claim here does not "aris[e] out of such products" as required by Exclusion (n). Holsum asserts that the completed product did not cause any harm. Rather, the harm was caused *by* the

manufacturing process *to* the ingredients supplied by Kingsford. That is, the "occurrence" took place before the "product" even existed.

As used in a liability insurance policy, the words "arising out of" are very broad, general and comprehensive. *Lawver v. Boling,* 71 Wis. 2d 408, 415, 238 N.W.2d 514, 518 (1976). They are commonly understood to mean originating from, growing out of, or flowing from, and require only that there be some causal relationship between the injury and the risk for which coverage is provided. *Id.*

Here, the harm grew out of the manufacturing process while making the product. Moreover, the property damage was to the products. We conclude that this argument of Holsum fails.

Finally, Holsum offers an alternative rationale, again focusing on the words "arising out of." It points out that only two to three percent of the jars were damaged; ninety-seven percent were free from defect. Holsum submits that the defect-free jars are not "property damage . . . arising out of such products." In support, it cites *L.D. Schreiber Cheese Co. v. Standard Milk Co.,* 457 F.2d 962 (8th Cir. 1972). In *Schreiber,* one or two vats of cheese became contaminated so that the cheese produced in those vats for that period was poisonous. The court treated the contaminated cheese (three percent) and the uncontaminated cheese as separate products. The court refused to apply the exclusion to the uncontaminated cheese, reasoning that only the contaminated cheese constituted the products "out of which the accident ar[ose]." *See id.* at 967.

We hold that *Schreiber* is inapposite. Exclusion (n) of the policy in this case denies coverage "to property damage . . . arising out of such products *or any part of such products.*" (Emphasis added.) That language does not appear in the policy language cited in *Schreiber*. Home's exclusion unambiguously applies to all of the named insured's products if the property damage arises out of all "or any part of such products." The *Schreiber* court was construing different policy language. Reliance on it is misplaced.

We reverse the trial court's order denying the motions for summary judgment. We remand to the trial court with directions to enter judgment favoring Home.

*By the Court.*—Order reversed and cause remanded with directions.