Robert L. BULEN and Sandra M. Bulen, his wife,
Plaintiffs,

v.

WEST BEND MUTUAL INSURANCE CO.,
a Wisconsin corporation, Defendant-Respondent,

Jerome BENCE, d/b/a JBJ Construction Company, alias,
and JBJ Construction Incorporated, a Wisconsin
corporation, Defendants and Third-Party Plaintiffs-
Appellants,†

LLOYD S. HAMM, INCORPORATED and Ron Grimm, d/b/a
Chip's Excavating Service, a/k/a Chip's Excavating
& Grading Corp., Third-Party Defendants.

Court of Appeals

*No. 84–2482. Submitted on briefs April 19, 1985.—
Decided June 5, 1985.*
(Also reported in 371 N.W.2d 392.)

---

† Petition to review denied.

For the defendants and third-party plaintiffs-appellants, the cause was submitted on the briefs of *William J. Chandek,* of Menomonee Falls.

For the defendants-respondents, the cause was submitted on the brief of *Eric S. Darling,* of *Schmidt & Darling,* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   The issue in this case is whether West Bend Mutual Insurance Company is liable to its insured, Jerome Bence, a building contractor, for dam-

ages to the plaintiffs, Robert and Sandra Bulen, when a basement wall collapsed during construction of the Bulen home. The trial court dismissed the Bulens' complaint against West Bend. West Bend's insured, Bence, appeals.

West Bend issued a comprehensive general liability, completed operations, and products liability insurance policy to Bence. The policy contained the following exclusionary language:

This insurance does not apply:
(A) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;
(N) to property damage to the named insured's products arising out of such products or any part of such products;
(O) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts, or equipment furnished in connection therewith;
. . . .

Based upon the above language, the trial court concluded that West Bend did not insure Bence's liability to the Bulens for the collapse of the basement wall under construction.

No Wisconsin case has interpreted the effect of the exclusionary language contained in the West Bend policy. Cases from other jurisdictions reflect a split of authority as to whether this language excludes coverage.

A majority of jurisdictions have adopted the rationale of *Weedo v. Stone-E-Brick, Inc.*, 405 A2d 788 (N.J. 1979). *Weedo* discusses the distinction between the two kinds of risk undertaken by a contractor in the construction process. The so-called "business risk" refers to the expenses of repair or replacement incurred

by the contractor in the event his work does not live up to its warranties. This risk is presented in the instant case. The other risk refers to injury to people and damage to property caused by the contractor's faulty workmanship. This risk is not presented in this case. *Weedo* holds that comprehensive general liability insurance policies containing exclusionary language of the type in this case afford coverage for the latter type of risk but not the former, or so-called, "business risk."

The minority line of cases adopt various theories in affording coverage in the "business risk" situation such as is presented in this case. One approach holds that an exception to an exclusion clause like that in paragraph (A) operates to grant coverage to the insured. *See Applegren v. Milbank Mutual Insurance Co.*, 268 N.W.2d 114 (N.D. 1978). The same conclusion has been reached where the totality of the exclusionary language was found to be either ambiguous or irreconcilable. *See Aid Insurance Services, Inc. v. Geiger*, 294 N.W.2d 411 (N.D. 1980). Another approach holds that paragraph (A) is the more specific as compared to (O), the more general, thus affording coverage under this well-accepted rule of construction. *See Fontainebleau Hotel Corp. v. United Filigree Corp.*, 298 So. 2d 455 (Fla. App. 1974).[1] It should be noted that the Florida Supreme Court subsequently rejected this approach in favor of the majority position enunciated in *Weedo*. *LaMarche v. Shelby Mutual Insurance Co.*, 390 So. 2d 325, 326–27 (Fla. 1980). Still another approach holds that this type of exclusionary language might reasonably be read by an ordinary contractor as providing coverage in the "business risk" situation although such coverage was not intended by the insurer. *See Baybutt*

---

[1] This rule of construction has been applied in Wisconsin when considering other insurance contract language. *See Ruppa v. American States Insurance Co.*, 91 Wis. 2d 628, 641–42, 284 N.W. 2d 318, 323 (1979).

*Construction Corp. v. Commercial Union Insurance Co.,* 455 A.2d 914 (Me. 1983).

Here, there is no dispute that paragraphs (N) and (O), standing alone, operate to exclude coverage under the facts of this case. The question thus becomes the effect, if any, of paragraph (A) on these exclusions. On this question, we conclude that the majority rule as represented by *Weedo* is the better reasoned rule, and we adopt it here.

We first observe that the clauses under consideration here are exclusion clauses—not coverage clauses. A reasonable person in the position of an insured should, thus, be put on notice that these portions of the policy limit coverage rather than confer it. Such clauses *subtract* from coverage rather than grant it. *Weedo* at 795. The test is not what the insurer intended its words to mean but what a reasonable person in the position of an insured would have understood the words to mean. *Bankert v. Threshermen's Mutual Insurance Co.,* 105 Wis. 2d 438, 445, 313 N.W.2d 854, 857 (Ct. App. 1981), *aff'd,* 110 Wis. 2d 469, 329 N.W.2d 150 (1983).

Bence concedes that paragraphs (N) and (O) operate to exclude coverage but claims that paragraph (A) effectively resurrects it. However, interpretations which render insurance contract language superfluous are to be. avoided where a construction can be given which lends meaning to the phrase. *See Vidmar v. American Family Mutual Insurance Co.,* 104 Wis. 2d 360, 367, 312 N.W.2d 129, 132 (1981). Bence's interpretation of paragraph (A) would violate this rule of insurance contract construction.

Next, Bence argues that paragraph (A), read in conjunction with paragraphs (N) and (O), creates a condition of ambiguity which must be construed against West Bend. We again note that Bence does not contend

that paragraphs (N) and (O) are ambiguous or misleading. Indeed, the majority rule holds that these clauses clearly exclude the "business risk" occurrence from coverage.

We have already noted that a fair reading of the policy by a reasonable insured gives notice that this language excludes or subtracts from coverage rather than conferring, extending, or broadening it. Furthermore, any ambiguity must be genuine. *Weedo* at 794. A genuine ambiguity arises when the phrasing of a policy is so confusing that the average policyholder cannot make out the boundaries of the coverage. *Id.* at 795. Paragraphs (N) and (O) clearly exclude the occurrence here. Even if (A) is ambiguous or difficult to interpret, nothing in its language suggests that it extends any coverage to Bence which is clearly and unambiguously excluded by the latter paragraphs. Thus we conclude that even if (A) is ambiguous, such ambiguity is not genuine.

While we acknowledge that we must construe all exceptions that tend to limit liability most strictly against the insurer, we also note that such strict construction does not permit strained construction. *Bankert,* 105 Wis. 2d at 444, 313 N.W.2d at 857. We must also bear in mind that if we were to accept Bence's logic, paragraph (A) might well undo numerous other exclusions written into the policy. We will not, under the guise of strict construction against the insurer, rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid. *Id.* at 444–45, 313 N.W.2d at 857. As *Weedo* observes:

The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed

work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

*Id.* at 791, quoting Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know,* 50 Neb. L. Rev. 415, 441 (1971). Similarly, under the facts of this case, we conclude that Bence contracted for insurance protection against tort liability and not for contractual liability. The plain language of paragraphs (N) and (O) excludes the so-called "business risk" occurrence as found in this case. The policy in question here does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident. *See Weedo* at 796. We read paragraph (A) to exclude West Bend's obligation for any liability assumed by Bence pursuant to contract or agreement. The exception to this exclusion assures, however, that claims premised upon actual or implied warranty will be covered. *Id.* at 796. Such claims must nevertheless be otherwise cognizable under the general grant of coverage in the first instance in order to constitute a claim "to which this insurance applies."[2] *Id.* In this case, such coverage is not included

---

[2] The pertinent coverage language of the policy provides as follows:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

under the general grant of coverage and is effectively excluded under the provisions of paragraphs (N) and (O).

*By the Court.*—Judgment affirmed.

Coverage A.  bodily injury or
Coverage B.  property damage
*to which this insurance applies*