Leonard H. Jacob and Janet Jacob, Plaintiffs-Respondents,

v.

Russo Builders and GRE Insurance Group, Defendants-Respondents,

Limbach Construction Company, Defendant,

West Bend Mutual Insurance Company, Defendant-Appellant.

Court of Appeals

*No. 97–3736. Oral argument November 10, 1998.—Decided January 13, 1999.*

(Also reported in 592 N.W.2d 271.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Neal C. Schellinger* of *Schellinger & Associates* of Brookfield, with oral argument by *Neal Schellinger*.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Thomas R. Schrimpf* and *Susan R. Tyndall* of *Hinshaw & Culbertson* of Milwaukee, with oral argument by *Susan R. Tyndall*.

Before Brown, Nettesheim and Anderson, JJ.

NETTESHEIM, J. This case involves the interpretation of the business risk exclusion in a comprehensive general liability (CGL) policy issued by West Bend Mutual Insurance Company (West Bend) to Limbach Construction Company (Limbach). Limbach was a subcontractor who performed defective masonry work on a residence constructed for Leonard H. and Janet Jacob. As a result, the Jacobs suffered significant damages. West Bend appeals from an amended judgment premised upon the trial court's ruling that various damages to the Jacobs' home arising out of Limbach's faulty masonry were not excluded under the CGL policy it issued to Limbach.

This is the second time West Bend has appealed this case. In *Jacob v. West Bend Mutual Insurance Co.*, 203 Wis. 2d 524, 553 N.W.2d 800 (Ct. App. 1996) (*Jacob I*), we reversed a ruling by Reserve Judge David C. Willis that West Bend had not properly discharged its

440

duty to defend Limbach and therefore had waived its insurance coverage defenses. We determined that West Bend had properly discharged its duty to defend Limbach. We remanded the case to have the trial court determine West Bend's coverage defenses and, if coverage existed, to determine what damages were covered by West Bend's policy. On remand, the case was assigned to Judge Robert G. Mawdsley.

The issue on this appeal is whether various categories of damage incurred by the Jacobs are covered under West Bend's CGL policy which includes a business risk exclusion precluding coverage for damage to the named insured's work or product. Judge Mawdsley found coverage for all items of damage except those directly incurred in replacing and repairing the brick, and entered judgment against West Bend accordingly. We affirm in part, reverse in part and remand for further proceedings.

### FACTS

In March 1990, the Jacobs contracted with Russo Builders, a general contractor, for the construction of their home. Russo Builders then subcontracted with Limbach for the completion of several projects, including the masonry and brick veneer which would cover the entire exterior of the house with the exception of a small portion of the east wall, dormers and wood trim.

After the Jacobs moved into their home, they began to experience problems with rainwater leaking into the home through the masonry of every exterior wall. *See id.* at 529, 553 N.W.2d at 802. A severe rainfall in April 1993 caused flooding in the dining room and back hallway, and the ceilings bulged with water. *See id.* Ernest Bullock, an expert hired by the Jacobs, discovered that the water leakage was due solely to

insufficient mortar between the bricks. Therefore, Limbach's masonry work was the cause of the water problems. Besides the costs for repairing and replacing Limbach's defective work, the Jacobs' other damages included: (1) expert fees to determine the cause and extent of the damage; (2) temporary repairs; (3) repairs to the interior of the residence; (4) relocation expenses while the interior repairs were made; (5) loss of use and enjoyment while the interior repairs were made; (6) refinancing costs; and (7) repairs to the landscaping, driveway, patio and sidewalk which were damaged in the course of accessing the defective masonry.

The Jacobs sued Russo Builders, Limbach and their insurers for damages resulting from the defective masonry. The issues in the first trial were whether West Bend had properly discharged its duty to defend Limbach and the extent and cost of the Jacobs' damages. Judge Willis determined that West Bend had not properly discharged its duty to defend Limbach. The jury determined that Russo Builders and Limbach were each fifty percent causally negligent and awarded the following damages:

| | |
|---|---|
| Repair Interior Damage | $9800 |
| Driveway, Sidewalk, Patio Repair | $5500 |
| Expert Fees and Testing to Determine Cause | $4760.91 |
| Temporary Relocation Expense | $3000 |
| Repair of Landscaping | $5000 |
| Refinancing Costs | $8300 |
| Temporary Repairs | $1000 |
| Loss of Use and Enjoyment | $50,000 |

The jury additionally awarded $110,500 associated with repairing the brick. On motions after verdict, Judge Willis reduced that amount to $102,470.[1] Based on the ruling that West Bend had breached its duty to defend Limbach, Judge Willis ruled that West Bend was liable for Limbach's portion of the verdict. *See id.* at 534, 553 N.W.2d at 804.

West Bend appealed the judgment, arguing that Judge Willis had erroneously determined that it had waived its insurance coverage defenses by failing to fulfill its duty to defend Limbach. *See id.* at 535, 553 N.W.2d at 804. We agreed with West Bend, reversed the judgment and remanded to the trial court to address West Bend's coverage defenses. *See id.* at 538, 553 N.W.2d at 805.

On remand, the case was assigned to Judge Mawdsley. Before Judge Mawdsley, West Bend argued, as it does here, that coverage for the damages claimed by the Jacobs was precluded by the business risk exclusion. Judge Mawdsley disagreed, ruling that West Bend's CGL policy provided coverage for all damages awarded by the jury, except the $102,470 associated with repairing and replacing the brick. West Bend again appeals. The Jacobs and Russo (Jacobs) are again respondents.

## DISCUSSION

### The Business Risk Exclusion and Economic Loss

We begin by stating a point on which the parties agree. West Bend's CGL policy does not provide coverage for the cost of repairing or replacing Limbach's

[1] In *Jacob v. West Bend Mutual Insurance Co.*, 203 Wis. 2d 524, 553 N.W.2d 800 (Ct. App. 1996) (*Jacob I*), we upheld Judge Willis's reduction of the jury's award.

defective work ($102,470). Rather, this appeal concerns the other categories of the Jacobs' damage, all of which stem either directly or indirectly from Limbach's defective work. West Bend contends that since all these damages relate either to Limbach's defective masonry product or the costs attendant to repairing or replacing such product, they are excluded under the business risk exclusion.[2] The Jacobs respond that because Limbach's faulty masonry caused harm to property other than his own work or product, Judge Mawdsley correctly ruled that the policy provides coverage.

The interpretation of an insurance policy presents a question of law which we review de novo. *See Filing v. Commercial Union Midwest Ins. Co.*, 217 Wis. 2d 640, 644, 579 N.W.2d 65, 66 (Ct. App.), *review denied,* 220 Wis. 2d 366, 585 N.W.2d 158 (1998). "When interpreting words of an insurance contract, we operate under the principle that the test is not what the insurer intended the words to mean, but rather what a reasonable person in the position of the insured would have understood the words to mean." *Id.*

---

[2] Although we rule for the Jacobs in this appeal, we reject their contention that West Bend's argument is inadequately briefed because it "does not specifically identify the exclusions it relies upon or illustrate for the court how it claims that the exclusions apply to the facts here." The Jacobs acknowledge that although it is initially unclear as to which provisions West Bend is relying upon, West Bend identifies the exclusion provisions at issue later in its brief—"paragraphs 11(b)(4)(c) and 13." Because paragraph 11(b)(4)(c) does not exist in the policy, we assume West Bend refers to paragraph 11(c). We deem West Bend's arguments in relation to these provisions to be adequately briefed.

The policy issued to Limbach contains a business liability provision which states that West Bend "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage or personal injury caused by an occurrence to which this insurance applies." (Emphasis omitted.) Pursuant to the language of the business risk exclusion at issue here, the policy does not provide coverage for damage to property "with respect to the completed operations hazard, to work performed by the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith" or for "property damage to the named insured's products arising out of such products or any part of such products." (Emphasis omitted.)[3]

---

[3] The provisions at issue are as follows:

**COVERAGE E—BUSINESS LIABILITY**

The Company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of **bodily injury, property damage** or **personal injury** caused by an **occurrence** to which this insurance applies.

. . . .

**BUSINESS LIABILITY EXCLUSIONS**

Under Coverage E, this policy does not apply:

. . . .

11. to damage to property:

. . . .

(b) except with respect to liability under a written side-track agreement or the use of elevators to:

(4) that particular part of any property, not on premises owned by or rented to the **insured**:

. . . .

(ii) out of which any **property damage** arises; or

445

West Bend contends that the purpose of this exclusion is to "prevent liability coverage for . . . faulty work and . . . attendant business risks involved with replacing and repairing the damages associated with the defective product or work." It argues that the damages covered by Judge Mawdsley's ruling are encompassed by the exclusion. West Bend contends that Judge Mawdsley's ruling functionally converts this CGL policy into a performance bond.

■

West Bend relies upon this court's decision in *Bulen v. West Bend Mutual Insurance Co.*, 125 Wis. 2d 259, 371 N.W.2d 392 (Ct. App. 1985). There, the property owner sued a contractor for damages resulting from the collapse of a basement wall during construction. The CGL policy issued to the contractor excluded, inter alia, coverage for property damage to the insured's product and for property damage to work performed by the insured. *See id.* at 261, 371 N.W.2d at 393. After considering the totality of the contract, and particularly the exclusionary provisions, we held that CGL policies with these kinds of exclusions were not intended to guarantee the quality of the workmanship

---

(iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the **insured**;

(c) with respect to the completed operations hazard, to work performed by the **named insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

. . . .

13. to **property damage** to the **named insured's products** arising out of such **products** or any part of such **products**[.]

and therefore did not provide coverage. *See id.* at 264–66, 371 N.W.2d at 394–95.[4] We stated:

> The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

*Id.* at 264–65, 371 N.W.2d at 394 (quoted source omitted).[5]

---

[4] In a case released this same day involving a CGL policy with newer, different and broader language, we have engaged in a similar analysis and have concluded that the policy provides coverage. *See Kalchthaler v. Keller Constr. Co.*, 224 Wis. 2d 387, 401–03, 591 N.W.2d 169, 174–76 (Ct. App. 1999).

[5] This same approach was recently adopted by the Indiana Court of Appeals in *R.N. Thompson & Associates, Inc. v. Monroe Guaranty Insurance Co.*, 686 N.E.2d 160, 162 (Ind. Ct. App. 1997). There, the court explained the two types of risks that arise out of an insured contractor's work. The first risk is that the contractor's work will be faulty and therefore, the dissatisfied customer may recover the cost of repair or replacement of the faulty goods and work. *See id.* The second risk is that the faulty workmanship will cause injury to people and damage to

447

Thus, *Bulen* instructs that CGL coverage exists for tort damages but not for economic loss resulting from contractual liability. As we have noted, the parties agree (as· do we) that the replacement and repair of Limbach's masonry product is economic loss to the Jacobs based on Limbach's contractual liability and is not covered under the West Bend CGL policy. Were it otherwise, West Bend's CGL policy would truly have been converted to a performance bond contrary to *Bulen*.

█

However, in this case, Limbach's defective masonry work inflicted damage to more than just the masonry work product. It also inflicted tangible physical damage to the interior of the Jacobs' residence. Tort law recognizes the right to recover economic losses in such a situation. *See Tony Spychalla Farms, Inc. v. Hopkins Agric. Chem. Co.*, 151 Wis. 2d 431, 436–37, 444 N.W.2d 743, 746–47 (Ct. App. 1989). The Jacobs' complaint alleged a variety of causes of action against Limbach, including negligence. The jury answered that Limbach was fifty percent causally negligent. Thus, we have the very situation contemplated by *Bulen*—physical damage to other property based upon tort liability. That triggers CGL coverage for the damage arising out of Limbach's defective work.

---

property and expose the contractor to "almost limitless liability." *See id.* The former risk is not covered under a CGL policy, while the latter is. The court stated: "[CGL] coverage is for tort liability for physical damages to others, and not for contractual liability of the insured for economic loss suffered because the completed work is not what the damaged person bargained for." *Id.* Damages incurred in repairing or replacing the faulty goods and work is a business expense to be borne by the contractor. *See id.*

The question thus narrows to which of the categories of damages awarded by the jury are covered under the West Bend policy. West Bend argues that most of the Jacobs' damages relate to costs associated with the repair and replacement of Limbach's defective work. West Bend contends that *St. John's Home v. Continental Casualty Co.*, 147 Wis. 2d 764, 434 N.W.2d 112 (Ct. App. 1988), bars recovery of such items.

In *St. John's*, the owner contracted for the construction of a nursing home. The general contractor subcontracted the masonry work to Knuth Masonry, Inc. After experiencing problems with the masonry, the owner sued, among others, Knuth and its insurer. *See id.* at 769, 434 N.W.2d at 114. The insurer contended that coverage for the damages was barred by the business risk exclusions in each of their CGL policies. *See id.* at 769–77, 434 N.W.2d at 114–17. The trial court agreed with respect to those damages relating directly to the defective masonry, i.e., demolition of the brick and shelf angles, masonry materials and labor, sealants, costs of the replacement contract and consulting fees. However, the trial court excepted the damages incurred in earthwork and landscaping, finding that these costs were potentially covered. *See id.* at 778, 434 N.W.2d at 118.

On appeal, the court of appeals addressed only the trial court's potential allowance of the earthwork and landscaping costs.[6] The court held that the trial court incorrectly authorized St. John's to apply for the disbursement of the $11,400 incurred in earthwork and

---

[6] *St. John's* was a duty to defend case—not a coverage case. *See St. John's Home v. Continental Cas. Co.*, 147 Wis. 2d 764, 782–88, 434 N.W.2d 112, 119–22 (Ct. App. 1988). However, the court measured Continental's duty to defend from the coverage provisions in the policy. *See id.*

landscaping from one of the insurance companies because those costs were excluded under each of the four insurance policies. *See id.* at 788, 434 N.W.2d at 122. We held, "This order was in error because the policies excluded liability for these and any other claims resulting from the repair or replacement of defective work products, or from defective work performance." *Id.* at 786–87, 434 N.W.2d at 121. West Bend contends, pursuant to *St. John's*, that most of the damages claimed by the Jacobs resulted from Limbach's defective performance and are similarly excluded.

We partially agree with West Bend. In *St. John's*, the defective masonry work was the only property damaged; the facts do not reveal damage to other portions of the property. The damages claimed by the owner included costs associated with investigating the cause of the damage, assessing the extent of the needed repairs, and repairing or replacing the defective work. *See id.* at 777–78, 434 N.W.2d at 118. As such, those costs were *directly related to the repair and replacement of the defective work.* Here, the Jacobs' damages for landscaping, driveway, sidewalk and patio repair are similarly related to Limbach's defective work. The damage to these areas is a direct result of accessing, repairing and replacing the defective masonry. Under *St. John's*, those costs are not covered by West Bend's CGL policy.

██

Moreover, it appears that West Bend's CGL policy captures the law of *St. John's.* The policy also excludes "the loss of use of tangible property which has not been physically injured or destroyed resulting from . . . the failure of the named insured's products or work performed by . . . the named insured to meet the level of

450

performance, quality, fitness, or durability warranted or represented by the named insured." Limbach's defective work did not injure or destroy these areas of the Jacobs' property.[7] Rather, the repair efforts by others occasioned these damages. We reverse this portion of the judgment.

However, other categories of the Jacobs' damages such as relocation costs, temporary repairs, loss of use and enjoyment of the residence, and repair of the interior of the residence are not directly the consequence of repairing or replacing Limbach's defective work. Rather, they represent collateral damage to the Jacobs' "other property" (the interior of the residence) and the costs associated with addressing and correcting that situation. As we have noted, these represent economic losses which can be recovered in tort, and, as such, they are covered by West Bend's CGL policy. We affirm this portion of the judgment.

Still other categories of the Jacobs' damages fall into a gray area. These are the expert fees relating to the investigation of the cause and extent of the damage and the refinancing costs. We cannot say from the present record whether these items represent damage wholly and directly related to repairing or replacing the defective work which is not covered, whether they represent collateral economic loss which is covered, or whether portions of these costs might fall into both categories. Therefore, we must also reverse these

---

[7] West Bend also relies on this exclusion to bar coverage for the damage to, and loss of use of, the interior of the Jacobs' residence. However, this exclusion applies only to property which was not injured or destroyed. Here, the interior of the residence was clearly injured.

awards and again remand this case for a further determination of this issue under the guidelines we have set out in this opinion.

Next, West Bend urges this court to view Limbach's role in the construction of the Jacobs' home as part of an "integral system" such that the finished product is viewed as his work as well. The "integral system" approach has been applied in product liability cases. *See Midwest Helicopters Airways, Inc. v. Sikorsky Aircraft*, 849 F. Supp. 666 (E.D. Wis.) *aff'd*, 43 F.3d 1391 (7th Cir. 1994); *Midwhey Powder Co. v. Clayton Indus.*, 157 Wis. 2d 585, 460 N.W.2d 426 (Ct. App. 1990). When each component of a single system is integrally connected to another as part of an overall apparatus, the parts cease to be separate property. *See Midwhey*, 157 Wis. 2d at 591, 460 N.W.2d at 429. Under those circumstances, tort recovery is not allowed because the damage is not inflicted to "other property." *See id.*

We reject West Bend's argument. Although this case has product liability overtones because Limbach performed defective workmanship, West Bend does not cite to any case in which products liability law has been applied in a situation where a general contractor or subcontractor has provided a trade service as opposed to a manufactured product.[8] Imposing strict liability on manufacturers ensures that the risk of loss associated with the use of defective products will be borne by those who have created the risk and who have reaped

___

[8] For example, California has limited the doctrine of strict liability in construction situations "to defendants who are characterized as mass producers, developers and sellers/lessors of real property developments." *La Jolla Village Homeowners' Ass'n, Inc. v. Superior Court (Quality Roofing, Inc.)*, 212 Cal. App. 3d 1131, 1144 (Cal. Ct. App. 1989).

the profit by placing a defective product in the stream of commerce. *See Kemp v. Miller*, 154 Wis. 2d 538, 556, 453 N.W.2d 872, 879 (1990). Limbach was a tradesman who provided a service resulting in a product. He neither manufactured a product nor introduced a product into the stream of commerce.

Thus, the issue here is the meaning of the CGL policy language and its application to the facts of this case. In construing an insurance policy, we determine what a reasonable insured would have understood the language of the policy to mean. *See Filing*, 217 Wis. 2d at 644, 579 N.W.2d at 66. Although both *Midwest* and *Midwhey* discuss the application of an "integral system" approach, neither involves an insurance coverage issue, and neither assists us in determining how a reasonable insured would understand the language of the CGL policy at issue in this case.

West Bend's CGL policy expressly confers coverage for Limbach's work and limits its exclusion to Limbach's work or product. Russo Builders subcontracted with Limbach to perform certain tasks that were separate and distinct from those it performed. To now view the completed home as Limbach's product would stretch beyond any insured's reasonable comprehension of the policy. We therefore conclude that West Bend's policy provides coverage for the damages claimed by the Jacobs with the exception of the cost of repairing and replacing the brick and the additional damage directly inflicted by that effort.

West Bend further argues, pursuant to the holding in *Leverence v. United States Fidelity & Guaranty*, 158 Wis. 2d 64, 462 N.W.2d 218 (Ct. App. 1990), that Limbach is not entitled to coverage for economic losses. We disagree. In *Leverence*, the supreme court declined to address the issue of economic losses, stating that

"purely economic losses arising out of a defective product are already barred by the business risk exclusion." *Id.* at 87, 462 N.W.2d at 228. Here, however, we have already detailed that Limbach's defective work inflicted damage to other property of the Jacobs. As such, the Jacobs are entitled to recover their tort-based economic losses.[9]

---

[9] Although we disagree with West Bend on this issue, we reject the Jacobs' reliance upon our supreme court's decision in *Sola Basic Industries, Inc. v. United States Fidelity & Guaranty Co.*, 90 Wis. 2d 641, 280 N.W.2d 211 (1979), in support of their contention that coverage exists for economic losses. There the court found coverage for economic losses when a manufacturer was unable to operate its business because of a defective part purchased from the insured. However, the standard policy language at issue in *Sola Basic* has since changed.

In *Sola Basic*, property damage was defined as "injury to or destruction of tangible property." *See id.* at 646, 280 N.W.2d at 213. In addressing the definition of property damage in CGL policies, the court observed: "[T]he policy will cover the insured's legal liability if no specific exclusion applies even though the tangible property is not physically damaged but is made useless by the act of an insured. . . . Under the definition of 'damages' loss of use claims . . . would be covered." *Id.* at 647–48, 280 N.W.2d at 214 (quoted source omitted). After considering several cases from other jurisdictions, the court held: "[T]he term 'property damage' to tangible property does not necessarily require physical damage [and] tangible property may be damaged in that it is diminished in value or made useless, irrespective of actual physical injury to the tangible property." *Id.* at 653–54, 280 N.W.2d at 217.

The standard CGL policy language has since changed. It now defines "property damage" as "*physical* injury to or destruction of tangible property." (Emphasis added.) Thus, the court's reasoning in *Sola Basic* does not apply to the definition of property damage in West Bend's policy.

454

## CONCLUSION

We reverse outright the award for the damages relating to repairs for the landscaping, sidewalk, patio and driveway. We reverse the award for the expert fees and refinancing costs, and we remand those issues for further consideration pursuant to this opinion.[10] We affirm the awards for repair of the interior damage, temporary relocation expenses, temporary repairs and loss of use and enjoyment of the property.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded.

---

[10] On remand, the trial court may, in its discretion, take further evidence if such is necessary.