Nu-Pak, Inc., Plaintiff-(In T.ct.),

v.

Wine Specialties International, Ltd., Defendant-Appellant,†

James E. Hutchison and Stephen E. Welter, Third-Party Defendants-(In T. Ct.),

Transportation Insurance Company, Third-Party Defendant-Respondent.

Court of Appeals

*No. 01–1314. Submitted on briefs November 8, 2001.—Decided March 28, 2002.*

2002 WI App 92

(Also reported in 643 N.W.2d 848.)

† Petition to review denied 6-11-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Sheila Stuart Kelley* and *Christopher D. Stombaugh* of *Kopp, McKichan, Geyer and Skemp, LLP* of Platteville.

On behalf of the third-party defendant-respondent, the cause was submitted on the brief of *David F. Farley* and *Laurie E. Meyer* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee.

Before Vergeront, P.J., Roggensack and Deininger, JJ.

¶ 1. ROGGENSACK, J. Wine Specialties International, Inc. is pursuing a direct action against the

commercial general liability insurer of Nu-Pak, the company that Wine Specialties contracted with to process and package a Wine Specialties' product. Wine Specialties alleges that Nu-Pak's negligence in hiring, training and supervising its employees caused substantial quality control problems with the Wine Specialties' product, ultimately rendering the product unmerchantable and causing substantial losses for Wine Specialties. The circuit court granted summary judgment to Nu-Pak's insurer after concluding that none of Wine Specialties' claims for relief is covered by the insurance policy. We conclude that the policy clearly and unambiguously provides no coverage for the property damage caused by Nu-Pak's alleged negligence. In addition, because the policy does not cover damage to intangible property or damages incidental to an uncovered type of damage, the insurer has no liability for any of Wine Specialties' incidental losses. Accordingly, we affirm the judgment of the circuit court.

## BACKGROUND

¶ 2. Wine Specialties is the developer of "Freeze and Squeeze," an alcoholic beverage intended to be packaged and sold to consumers in a freezable, stand-up pouch. Under the terms of a written contract, Nu-Pak was to mix and package the new product, using ingredients provided by Wine Specialties. At the time that Wine Specialties and Nu-Pak entered into the agreement, Wine Specialties had already secured contingent sales contracts for the product with various vendors and liquor distributors.

¶ 3. When Wine Specialties did not pay Nu-Pak's bill, Nu-Pak initiated an action for payment. Wine Specialties counterclaimed against Nu-Pak and filed a third-party complaint against Transportation Insur-

ance Company (Transportation), Nu-Pak's commercial general liability (CGL) insurer. According to Wine Specialties, various quality control problems at Nu-Pak led to improper formulations of the product and improper packaging such that the product became contaminated with bacteria and failed to meet other quality standards rendering it unmerchantable and unfit for human consumption.

¶ 4. The counterclaims and third-party claims were based on three principal theories: (1) Nu-Pak's alleged breach of contract; (2) Nu-Pak's alleged negligent hiring, training and supervision of its employees;[1] and (3) Nu-Pak's alleged intentional misrepresentations designed to induce Wine Specialties to enter the contract. Although Wine Specialties experienced direct injury to its property (*i.e.,* loss of the ingredients Wine Specialties provided for the product), Wine Specialties contends that Transportation, as Nu-Pak's insurer, is also liable for Wine Specialties' incidental losses, such as the cost of removal of the tainted product, lost revenue from the contingent contracts and future sales, as well as damage to Wine Specialties' business reputation.

---

[1] Wine Specialties' claim that Nu-Pak negligently hired, trained and supervised its employees was not listed as a separate claim in the pleadings. However, the circuit court determined that, for purposes of Transportation's motion for summary judgment, it was appropriate to consider the claim because "there is a strong likelihood that the court would allow [Wine Specialties'] pleadings amended again to include this new claim, as there would be little prejudice to [Transportation] by permitting this amendment." For the same reason, we will address the negligence claim.

¶ 5. Wine Specialties reached a settlement with Nu-Pak, leaving the third-party claims against Transportation as the sole remaining claims in the suit. Transportation moved for summary judgment on coverage, contending that Nu-Pak's CGL policy does not provide coverage for any of Wine Specialties' claims for relief. Treating the factual allegations in Wine Specialties' pleadings as undisputed for purposes of summary judgment, the circuit court granted Transportation's motion and dismissed Wine Specialties' claims, concluding that even if Wine Specialties proved its claims, there would be no coverage under the policy. Wine Specialties appeals.

## DISCUSSION

**Standard of Review.**

¶ 6. We review a circuit court's decision to grant summary judgment *de novo,* using the same standards applied by the circuit court. *Guenther v. City of Onalaska,* 223 Wis. 2d 206, 210, 588 N.W.2d 375, 376 (Ct. App. 1998). We first examine the complaint to determine whether it states a claim, and then we review the answer to determine whether it joins a material issue of fact or law. *Smith v. Dodgeville Mut. Ins. Co.,* 212 Wis. 2d 226, 232, 568 N.W.2d 31, 34 (Ct. App. 1997). If we conclude that the complaint and answer are sufficient to join issue, we examine the moving party's affidavits to determine whether they establish a *prima facie* case for summary judgment. *Id.* at 232–33, 568 N.W.2d at 34. If they do, we look to the opposing party's affidavits to determine whether there are any material facts in dispute that entitle the opposing party to a trial. *Id.*

¶ 7. For purposes of our review, the parties agree that the facts alleged in Wine Specialties' pleadings can be treated as undisputed. The ultimate issue before us is whether, under the undisputed facts, Transportation's CGL policy covers Wine Specialties' claims against Nu-Pak. Interpretation of a written insurance policy is a question of law, which we review without deference to the decision of the circuit court. *Guenther*, 223 Wis. 2d at 210, 588 N.W.2d at 377.

## The CGL Policy.

¶ 8. The CGL policy provides in relevant part:

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement.**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage"[2] to which this insurance applies . . . .

. . . .

**b.** This insurance applies to "bodily injury" and "property damage" only if:

---

[2] Under the policy, "property damage" is defined as:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence"[3] that takes place in the "coverage territory"; and

**(2)** The "bodily injury" or "property damage" occurs during the policy period.

(Footnotes added.) The policy's coverage for bodily injury and property damage is further restricted by numerous express exclusions, several of which are relevant to this appeal.

### 2. Exclusions.

This insurance does not apply to:

. . . .

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** Assumed in a contract or agreement that is an "insured contract,"[4] provided the "bodily injury" or

---

[3] Under the policy, an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

[4] The policy defines "insured contract" to mean, in relevant part:

> That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"property damage" occurs subsequent to the execution of the contract or agreement; or

(2) That the insured would have in the absence of the contract or agreement.

. . . .

### j. Damage to Property

"Property damage" to:

. . . .

(6) That particular part of any property that must be restored, repaired or replaced because "your work"[5] was incorrectly performed on it.

. . . .

### k. Damage to Your Product

"Property damage" to "your product"[6] arising out of it or any part of it.

(Footnotes added.)

---

[5] The policy defines "your work" to mean:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

**Policy Interpretation.**

¶ 9. The interpretation of an insurance policy is governed by rules of construction that are similar to those applied to other contracts. *Vogel v. Russo*, 2000 WI 85, ¶ 14, 236 Wis. 2d 504, 613 N.W.2d 177. If words or phrases in a policy are susceptible to more than one reasonable construction, they are ambiguous, *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597, 598–99 (1990), and we will construe the policy as it would be interpreted by a reasonable insured. *Holsum Foods Div. of Harvest States Coops. v. Home Ins. Co.*, 162 Wis. 2d 563, 568–69, 469 N.W.2d 918, 920 (Ct. App. 1991). However, if the policy is not ambiguous, we will not rewrite it by construction to impose liability for a risk the insurer did not contemplate and for which it has not been paid. *Taylor v. Greatway Ins. Co.*, 2001 WI 93, ¶ 10, 245 Wis. 2d 134, 628 N.W.2d 916; *Smith v. Katz*, 226 Wis. 2d 798, 807, 595 N.W.2d 345, 350 (1999).

---

[6] The policy defines "your product" to mean:

 **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

 **(1)** You;

 . . . .

"Your product" includes:

 **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

 **b.** The providing of or failure to provide warnings or instructions.

¶ 10. In *Bulen v. West Bend Mut. Ins. Co.*, 125 Wis. 2d 259, 371 N.W.2d 392 (Ct. App. 1985), we construed the purpose of CGL policies in light of similar exclusions. We explained:

> The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

*Id.* at 264–65, 371 N.W.2d at 394 (quoted source omitted). We concluded that the CGL policy at issue, which covered bodily injury and property damage, was intended to provide coverage for torts, not for breaches of contract. *Id.* at 265, 371 N.W.2d at 395; *see also Vogel*, 2000 WI 85 at ¶ 17 ("A CGL policy's sole purpose is to cover the risk that the insured's goods, products, or work will cause bodily injury or damage to property *other than* the product or the completed work of the insured.").

¶ 11. In apparent recognition of *Bulen*'s interpretation of the purpose and extent of CGL coverage, Wine Specialties pursues only the tort claim that Nu-Pak

negligently hired, trained and supervised the employees who were to perform the services specified in the processing and packaging agreement.[7] Wine Specialties offers two separate theories to support its argument in favor of coverage. First, it contends that the exclusions in the policy do not apply to the claim that Nu-Pak negligently hired, trained and supervised its employees, and therefore, Wine Specialties may proceed directly on that claim. Second, Wine Specialties contends that Nu-Pak expressly assumed various tort liabilities as part of the processing and packaging agreement and that those assumed liabilities fall within the "insured contracts" exception to the policy's exclusion of contractually assumed liabilities.

¶ 12. Because all of Wine Specialties' claimed damages in this case flow from Nu-Pak's failure to properly mix and package Wine Specialties' product, which was never consumed, the only type of coverage that applies to Wine Specialties' claim is the coverage for "property damage" that is caused by an "occurrence." There is no dispute that Nu-Pak's alleged negligence caused injury to Wine Specialties' tangible property (*i.e.*, Nu-Pak damaged the ingredients that Wine Specialties supplied to Nu-Pak). However, we note that the

---

[7] Wine Specialties makes no argument on this appeal that Transportation is liable under the CGL for Nu-Pak's breach of contract. Similarly, Wine Specialties makes no argument that Transportation must indemnify Nu-Pak if Nu-Pak is found liable for intentional misrepresentation. Accordingly, we do not address either the breach of contract claim or the claim for intentional misrepresentation.

damage to Wine Specialties' product is the *only* injury to *tangible* property alleged in this case.[8]

### 1. The "your product" and "your work" exclusions.

¶ 13. Assuming for the sake of argument that the damage to tangible property caused by Nu-Pak's alleged negligence falls under the policy's statement of coverage, the next question is whether one or more exclusions apply. Transportation contends that both the "your product" and "your work"[9] exclusions clearly and unambiguously apply in this case. We conclude that although there is some potential ambiguity in the "your work" exclusion, we agree with Transportation as to the "your product" exclusion.

¶ 14. We begin our analysis of the exclusions with the following basic observation about Nu-Pak's CGL policy: The CGL policy defines coverage (and some of the exclusions) in terms of *the particular injury* that results from a *particular occurrence.* Stated another way, the test for coverage has multiple elements, each of which must be satisfied before coverage is available under the CGL policy. *See Katz*, 226 Wis. 2d at 818, 595 N.W.2d at 354–55 (concluding that the insurer was obligated to provide coverage under a CGL policy simi-

---

[8] Wine Specialties also seeks damages for the cost of removing the tainted product, for lost revenue from contingent contracts and future sales, as well as for damage to its business reputation.

[9] The policy contains multiple exclusions that use the term "your work." When we refer to the "your work" exclusion, we are referring to exclusion j.(6) of the policy, quoted above, which is the exclusion that the circuit court's decision relied upon and that the parties' briefs primarily address.

lar to Nu-Pak's policy only if there were proof of (1) an occurrence that (2) caused (3) property damage).[10] In this case, Wine Specialties argues that Nu-Pak's negligent hiring, training and supervision of employees caused damage to the product that was processed and packaged at the Nu-Pak facility. Accordingly, the question before us is whether the "your work" exclusion or the "your product" exclusion applies to this particular combination of an occurrence and resulting property damage.

¶ 15. Under the "your work" exclusion, the policy excludes coverage for property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." The policy defines "your work" to include "work or operations performed by you or on your behalf." Transportation contends that the "your work" exclusion is not ambiguous because a reasonable insured in Nu-Pak's position would interpret the phrase "work or operations" to include managerial operations, such as the hiring, training and supervision of line employees. Wine Specialties, on the other hand, contends that:

---

[10] Wine Specialties contends that there must be coverage for negligent hiring, training and supervision because there is no express exclusion for negligent hiring, training and supervision. However, even if we were to assume, *arguendo,* that the policy covers negligent hiring, training and supervision of employees, in the abstract, as an "occurrence," the policy language is not applied in the abstract. It is applied to the particular combination of negligent act (*i.e.,* the occurrence) and resulting injury (*i.e.,* the property damage) alleged in the pleadings. Accordingly, the argument that the policy covers negligent hiring, training and supervision in the absence of an express exclusion *for that tort* is insufficient precisely because the test for coverage involves multiple elements.

> [The "your work" exclusion] would appear to directly relate to the measuring, mixing and packaging of the [Wine Specialties] product; in other words the hands-on work with the product. Conversely, negligent hiring, training or supervision deals with a company's failure with the work*ers* on the *operation,* not the product itself.

¶ 16. Wine Specialties' argument appears to rely on the language of the "your work" exclusion requiring that property damage be excluded from coverage if it occurs "because 'your work' was incorrectly *performed on it.*" (Emphasis added.) According to Wine Specialties, the negligence of the Nu-Pak line employees and the negligence of Nu-Pak management both may be causes of Wine Specialties' damages, but the "your work" exclusion should be read to apply only to the former because only the line employees' work was incorrectly performed on the damaged product itself.[11] While we appreciate Wine Specialties' argument, we need not decide whether the "your work" exclusion is ambiguous and could be applied to Wine Specialties' claim because the "your product" exclusion clearly precludes coverage.

¶ 17. Under the "your product" exclusion, there is no coverage for property damage to goods or products "manufactured" or "handled" by the insured. Here, Nu-Pak's alleged negligence purportedly was a cause of damage to property that Nu-Pak "manufactured" and "handled" in the course of attempting to fulfill its obligations under the processing and packaging agreement. *See Holsum Foods*, 162 Wis. 2d at 565, 569–70,

---

[11] Wine Specialties concedes in its brief that if the Nu-Pak employees who directly mixed and packaged the product were negligent, their negligence "may be excluded under what is commonly known as the business risk exclusion or in the case of this policy, the 'your work' exclusion."

469 N.W.2d at 919, 921–22 (concluding that the insured company was in the business of manufacturing a product within the meaning of a CGL policy when it mixed, cooked, jarred and packaged ingredients for a customer's product). Accordingly, we conclude, as we did in *Holsum Foods*, that the damage to Wine Specialties' tangible property is excluded under the unambiguous terms of the "your product" exclusion.

¶ 18. Additionally, Wine Specialties' asserted distinction between the negligence of Nu-Pak's line employees and the negligence of Nu-Pak's management is not relevant under the unambiguous language of the "your product" exclusion. Unlike the "your work" exclusion, which arguably refers to the cause of the property damage, the scope of the "your product" exclusion is defined solely by the type of property damage at issue. And, because the alleged property damage in this case is damage to a product manufactured by Nu-Pak, the "your product" exclusion applies whether the property damage was caused by the negligence of Nu-Pak's management, the negligence of Nu-Pak's line employees or the negligence of both management and the line employees.[12] Moreover, it is irrelevant that the policy

[12] Thus, contrary to Wine Specialties' contention, we conclude that this is not a case involving "concurrent causes" where one cause of the asserted damages is a covered risk and the other cause is uncovered or subject to an exclusion. *See, e.g., Valley Bancorporation v. Auto Owners Ins. Co.*, 212 Wis. 2d 609, 618, 569 N.W.2d 345, 349 (Ct. App. 1997) (noting that "it is well settled" that there is liability for the covered risk in a concurrent cause situation).

might provide coverage for negligent hiring, training and supervision of employees in cases where a different injury is alleged.[13]

¶ 19. Because we conclude that there is no coverage for the property damage allegedly caused by Nu-Pak's negligent hiring, training and supervision of its employees, we also conclude that there is no coverage for Wine Specialties' other damages, such as the costs of removing the contaminated product, the value of lost future sales and the damage to Wine Specialties' reputation. In addition to failing to qualify as damages to *tangible* property as the policy requires, Transportation is not liable because these damages are incidental damages that flow solely from excluded property damage. *See Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 2000 WI 26, ¶¶ 56–57, 233 Wis. 2d 314, 607 N.W.2d 276 (economic losses did not result from either of the types of damages covered under the policy; therefore, there was no coverage);[14] *Trio's, Inc. v. Jones Sign Co.*, 151 Wis. 2d 380, 384–85, 444 N.W.2d 443, 445 (Ct. App. 1989) (concluding that lost profits attributable to loss of use of the insured's product were not

---

[13] Wine Specialties cites several cases from other jurisdictions where courts found coverage under CGL policies for an insured's negligent hiring, training and supervision of employees. None of those cases required the courts to apply a "your product" exclusion to an occurrence that caused "property damage." The nature of Wine Specialties' alleged injury and the specific exclusion at issue are critical to our analysis.

[14] *Wisconsin Label Corp. v. Northbrook Property & Casualty Insurance Co.*, 2000 WI 26, 233 Wis. 2d 314, 607 N.W.2d 276, also relies on the economic loss doctrine to bar recovery. *Id.* at ¶ 58 (citing *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 266–68, 593 N.W.2d 445, 459–60 (1999)). However, since neither party raises the applicability of the economic loss doctrine to Wine Specialties' claim, we do not address it.

recoverable because "the insurance policy unambiguously excludes from coverage damage to the insured's product").

¶ 20. Wine Specialties cites *Jacob v. Russo Builders*, 224 Wis. 2d 436, 592 N.W.2d 271 (Ct. App. 1999), to support the contention that its incidental losses are covered by the CGL policy. In *Jacob*, a subcontractor's faulty brick work caused physical damage not only to the subcontractor's own work or product, but also *to other property*. *Id.* at 448, 592 N.W.2d at 276. The court then determined that there was coverage under the CGL policy for the other property damage and for economic losses that were "collateral" to covered property damage. *Id.* at 451, 592 N.W.2d at 277. Here, in contrast to *Jacob*, we have concluded that none of the property damage caused by Nu-Pak's alleged negligence is covered under the CGL policy, and, as stated above, Transportation is not liable for losses that are incidental to excluded property damage.

### 2. Contractually assumed liability.

■

¶ 21. Wine Specialties' alternative argument is that Nu-Pak expressly assumed various tort liabilities as part of the processing and packaging agreement and that those assumed liabilities fall within the "insured contracts" exception to the policy's contractual liability exclusion. In support of this argument, Wine Specialties relies on the policy definition of "insured contracts" and the following provision from the processing and packaging agreement:

ARTICLE 11.

INDEMNIFICATION AND INSURANCE

11.1) NUPAK shall indemnify and hold WSI, its

employees and agents, and/or any direct or indirect customer of WSI harmless from and against any and all liabilities, damages, injuries, claims, suits, expenses (including attorneys' fees, court costs and out-of-pocket expenses) . . . that may in any way arise from breach of warranty, express or implied, or any tort actions or claims, as to the quality of the Product, or any portion thereof, its merchantability, its fitness for the purpose for which it was sold, or the failure of the Product to maintain its quality standard for the duration of the Product's shelf life, except for such liabilities, damages, etc. caused solely by the negligence or willful misconduct of WSI or its employees.

11.2) NUPAK further shall indemnify and hold WSI, its employees and agents, harmless from any losses or damages to the Product and any WSI property (and related expenses) located in NUPAK's plant during the term of this Agreement.

¶ 22. We begin with the language of the CGL policy. The general rule established by the policy's contractual liability exclusion is that there is no coverage for property damage for which "the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." However, the policy also provides that the contractual liability exclusion does not apply to an "insured contract." An insured contract includes:

> *That part* of any other contract or agreement pertaining to your business . . . under which you assume *the tort liability of another party* to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(Emphasis added.)

843

¶ 23. In this case, any part of the processing and packaging agreement that might be read to address Nu-Pak's liability to Wine Specialties for negligent hiring, training and supervision would not be the assumption of the tort liability *"of another party."* Stated another way, any tort liability that Nu-Pak could have to Wine Specialties for negligent hiring, training and supervision is its own and could be enforced without any "assumption" of such liability in the agreement. Moreover, even if the exceptions to the contractual liability exclusion were in some way ambiguous, it would not be reasonable to interpret them to extend to Nu-Pak any coverage that the "your product" exclusion clearly and unambiguously denies. *See Bulen,* 125 Wis. 2d at 263–64, 371 N.W.2d at 394. Therefore, we conclude this provision provides no basis for coverage.

## CONCLUSION

¶ 24. We conclude that the policy clearly and unambiguously provides no coverage for the property damage caused by Nu-Pak's alleged negligence. In addition, because the policy does not cover damage to intangible property or damages incidental to an uncovered type of damage, the insurer has no liability for any of Wine Specialties' incidental losses. Accordingly, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.